J. PETER DEJON vs. THE SMEDLEY COMPANY.

Third Judicial District, Bridgeport, October Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 25th, 1928—decided January 24th, 1929.

*Philip Pond* and *Charles J. Martin,* with whom, on the brief, was *Walton E. Cronan,* for the appellant (defendant).

*Frederick H. Wiggin,* with whom was *Frank E. Callahan,* and, on the brief, *David L. Daggett,* for the appellee (plaintiff).

HINMAN, J. The court submitted to the jury two interrogatories: "(1) Did any loss or shrinkage in the contents of the fifty-nine barrels occur through failure of the defendant to exercise reasonable care in keeping the same? (2) Did the defendant take and appropriate to its own use any of the contents of the fifty-nine barrels?" Both of these were answered in the affirmative, and no question is made but that, however conflicting the evidence and claims, the jury might reasonably have so found and held and thereby charged the defendant with liability for such damage as the plaintiff established. Therefore the only considera-

tion open on that portion of the appeal which relates to the denial of the motion to set aside the verdict, concerns the damages awarded. It was established that the fifty-nine barrels in question were shipped to Swirsky & Son, from bonded warehouses, in May and June, 1920, and that official markings made by the government gaugers when the barrels were released from bond indicated that the aggregate content, at that time, was 3,017.94 proof gallons, forty-two of the barrels containing Bourbon whiskey and seventeen California brandy. The plaintiff attached these barrels and contents, together with five other barrels of liquor, on October 11th, 1920. From that date the plaintiff left the barrels in a room in the cellar of a building belonging to Swirsky & Son, in which they were when attached, until March 23d, 1922, when he removed them to the defendant's warehouse. There was testimony to the effect that when transferred to defendant's warehouse the barrels appeared, by their weight and other external indications, to be substantially full of some liquid, but no definite evidence as to the quantity and nature of the contents is afforded, from the time the barrels left bond in 1920 until April 27th, 1923, when a commercial gauger, one Farrell, employed by Finlay & Company, the attaching creditor, gauged the barrels in question. The result indicated the aggregate content, at that time, as being sixteen hundred and twenty-three proof gallons (twenty-nine of the barrels showing a proof of between 7.8 and 16.2 only, and an aggregate content of about one hundred proof gallons) and a loss, compared with the previous government gauging, of about thirteen hundred and forty-five proof gallons. Farrell made another test on December 28th, 1925, and reported a total content of two hundred and twenty-nine proof gallons, all contained in nine barrels, the remaining

fifty showing no proof content and apparently containing only water with or without further ingredients other than alcohol. A third gauge by Farrell on October 8th, 1926, the date on which the plaintiff demanded delivery, showed 206.25 proof gallons, contained in eight barrels, indicating a diminution, since the 1923 test, of 1,416.75 proof gallons, and a difference of about twenty-eight hundred gallons from the government gauge markings.

The burden rested upon the plaintiff to prove the nature and quantity of the property which he entrusted to the defendant and for loss of which he seeks damages; the trial court repeatedly so charged. The defendant contends, however, and we think with reason, that there was not such evidence before the jury as to enable them reasonably to ascertain, with sufficient definiteness, the amount of liquor at the date of delivery to the defendant. As to this, the plaintiff was dependent upon an inference that the nature and quantity, as to alcoholic content, remained substantially the same during all the vicissitudes of the nearly three years intervening between the withdrawal from bond and the deposit with the defendant. Such an inference may not be drawn, fairly or permissibly.

The jury could not reasonably have found other than that from May or June, until October, 1920, the barrels and their contents were in the hands of Swirsky & Son, under a government permit to have and sell liquor for nonbeverage purposes; for about a month after the attachment keepers were maintained, but were then withdrawn and the property remained in the cellar of Swirsky's building, which cellar was also occupied, in part, as well as the upper floors, by the Swirskys, unguarded and with no precautions against access sufficient to warrant an assumption that none of the con-

tents were tampered with. It was uncontradicted that the premises were repeatedly broken into; in April, 1921, five of the attached barrels were stolen, and on another occasion one barrel was removed to the back yard, when the thieves were discovered and fled. The plaintiff testified that these occurrences and the fact that the property was too much in the possession of the Swirskys caused him to regard the location as unsafe and to finally remove, on March 23d, 1922, the property to defendant's warehouse. A general statement of this situation, without enumeration, here, of further significant details is, we think, sufficient to demonstrate that it could not reasonably be found, by inference, that the liquors remained the same in alcoholic content, and in quantity without the aid of dilution, as when they left the bonded warehouse until entrusted to the defendant. Upon this record the jury could have found the vitally essential fact of the quantity and quality, and consequent value, of the property while in defendant's custody and before the first Farrell gauging, only by resort to unwarranted inference or equally inadmissible speculation and conjecture. The results of this gauging, if accepted by the jury—as they were entitled to do—afford the earliest sufficiently definite basis for ascertainment of the shortage for which the defendant might be held liable, by comparison of these results with those of the final test on the date of demand, which, as we have seen, showed a loss of about fourteen hundred proof gallons.

The only way in which the amount of damages awarded—$36,338.26—can be reconciled, approximately, with a finding of such a loss in gallons is—as the plaintiff concedes—by computing the value at $24 a proof gallon. The only evidence of market value of whisky and California brandy, comparable with the

figure, was as to the retail price on physicians' prescriptions, $3 per pint. The jury could not fairly attach such a value to the liquor here in question. In the first place, so far as appears, the only lawful market then open for liquor sold on execution was through sale, under special permit and without public advertising, to wholesale druggists holding proper permits. See Regulations 60, Commission of Internal Revenue as amended by No. 3208, Treasury Decisions, 1921. The price charged by wholesale dealers to retailers for whiskey and California brandy, in New Haven in October, 1926, according to the evidence presented, was from $33 to $36 per case of three proof gallons, bottled in bond in pint bottles. The lowest estimate of the cost of casing and bottling was from $1.65 to $2 per case. In addition, there must be considered the uncontradicted evidence as to the ample supply of marketable liquors in bond; also the suspicion attaching to liquor as soon as it passes out of bond, the effect of the history of these particular goods, and other considerations obviously affecting their marketability and market value.

It is clear that the amount of damages awarded by the verdict must either have been based upon conjecture as to the number of gallons of liquor delivered to the defendant, or upon a basis of valuation not fairly and reasonably to be derived from the evidence, and greatly excessive; therefore, the verdict should be set aside.

In view of this conclusion any useful purpose of discussion of the assignments of error pertaining to the charge may be accomplished by consideration of a few general propositions involved, without detailed analysis of the requests to charge, and portions of the charge, involved therein.

The defendant claimed that the situation, herein-

before stated, with reference to separate locks on the storeroom, the key to one being in the custody of the plaintiff and that to the other kept by the defendant, constituted such joint control as to relieve the defendant from the operation of the rule requiring the bailee to overcome the presumption of negligence raised by the nonproduction of the bailed goods, by explanation which shall satisfy the trier that the loss was not due to his failure to exercise reasonable care in the custody of the goods. *Murray* v. *Paramount Petroleum & Products Co., Inc.*, 101 Conn. 238, 242, 125 Atl. 617. The trial court was correct in charging that the double-lock arrangement worked no change in the status or obligation of the defendant warehouseman, but was to be considered merely as a circumstance toward establishing the exercise of due care. The other conditions revealed as to situation, custody, and opportunity for access other than through unlocking of the doors, were much less favorable to this contention of the defendant than in the somewhat analogous cases involving safe-deposit boxes, under the usual two-key arrangement, in which, notwithstanding such right of joint access, the duty of explaining the loss is held to remain with the defendant-bailee. "The plaintiff . . . could not obtain access to the property without the consent and active participation of the defendant. She could not go into her safe unless the defendant used its key first and then allowed her to open the box with her own key—thus absolutely controlling the access of the plaintiff to that which she had deposited." *Lockwood* v. *Manhattan Storage & Warehouse Co.*, 28 N. Y. App. Div. 68, 71. "The place itself is always under the part control of the lessor, and at certain times it is under its sole and absolute control. This latter condition obtains at all times when the lessee is not at the box." *McDonald* v. *Perkins & Co.*, 133

Wash. 622, 632, 234 Pac. 456; *Safe Deposit Co. of Pittsburgh* v. *Pollock*, 85 Pa. St. 391, 393; *Security Storage & Trust Co.* v. *Martin*, 144 Md. 536, 125 Atl. 449.

During the trial the defendant strenuously pressed a claim, including requests to charge, that the possession, by the plaintiff, of the liquors in question was unlawful under the Eighteenth Amendment, the National Prohibition Act, and the regulations prescribed, pursuant thereto, by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury; 41 U. S. Stat. at Large, p. 307, Title II, Chap. 85, §1(7); 27 U. S. C. A., Chap. 1, §4, subsection (7); 2 Mason's U. S. Code Anno. (1926) p. 1922 —so that he could not invoke the aid of the court in recovering damages for their loss or conversion. The trial court properly passed upon the legality of such possession, as a matter of law, and instructed the jury that the plaintiff had such possession that he had a legal right to store the property with the defendant. It would be strange indeed if liquors, lawfully possessed by one party as these were by Swirsky & Son, which are regularly attached and held by an officer under mesne process, should thereby become contraband and deprived of legal protection and preservation for the benefit of the judgment creditor through sale on execution, under rules and regulations consistent with the purpose of the Act. We find nothing in the letter or spirit of this constitutional amendment or the legislation under it which forces or justifies such a conclusion, nor that the fact that the plaintiff officer advertised the execution sale, in accordance with §5937 of the General Statutes, or any similar inconsequential departure from the procedure prescribed by the Federal authorities, would work such a destructive and unjust consequence as forfeiture of redress for the

loss or conversion. The charge in this respect was correct. It should be noted, however, that, since evidence as to Federal restrictions under which the liquor was held and must be sold was excluded, and the situation in that respect was derived, by the court, through judicial notice, only, those restrictions which pertain to the method of sale and limit, somewhat narrowly, the possible lawful market, were relevant to the question of value and should have been stated in the charge on that topic, together with the other salient facts, claimed by the parties as affecting such value, some of which have been already mentioned in discussion of the question of damages.

Since the warehouse receipt did not set forth any specific quantity, quality or value, the burden was upon the plaintiff to prove these elements essential to a recovery. The charge repeatedly so imposed this burden as to the contents of the barrels at the time of deposit with the defendant, but it should also have been made to appear more clearly that even if the plaintiff was unable to prove, with sufficient definiteness, the quantity at the time of delivery, yet if he did prove (as by the Farrell gauging) the quantity at some later time, he would be entitled to recover on that basis, since it is manifest that the quantity delivered could not, at least, have been less than that present at the later time.

Especially under the circumstances disclosed, the defendant was fairly entitled to the requested charge, in substance, that in determining the loss in proof gallons in each barrel, the jury could not resort to speculation, surmise or conjecture, either as to the original content, or the portion thereof, if not all, for which the defendant was chargeable. The importance of this caution in the present case is demonstrated by what has heretofore been said in discussing the verdict.

Had this request been substantially acceded to and if there had been given a summary of the evidence on the issue of quantity and a proper direction as to how to apply thereto the principle so charged, it would have appeared, clearly, that a finding could not properly be reached that the amount of liquor in proof gallons delivered to the defendant was the same as when the barrels were taken from the warehouse, or that the defendant could be charged with liability, in any event, for a greater quantity than that shown by the gauge of April, 1923. Therefore the principal infirmity which the verdict exhibits, as above stated, probably would have been obviated. Indeed, the trial court might well have instructed the jury that, upon the evidence, they could not legitimately find the quantity delivered to the defendant to have exceeded, at most, the number of gallons indicated by the first Farrell gauge.

Depreciation through natural causes, such as evaporation and soakage, is a matter to be proven by evidence, not by resort to judicial notice.

As to rulings on evidence: Plaintiff's Exhibit G appears to have constituted a sufficient demand for the purposes of this action and Exhibit H, which amounted to a subsequent amplified demand and a notice of claim for damages and of intended legal action, was superfluous, but its admission does not amount to reversible error. The legality of plaintiff's possession was, as the court ruled, a matter of law, depending on the Federal statutes and regulations, and defendant's Exhibit 31 for identification—a communication from the Federal Prohibition Commissioner to the Prohibition Director at Hartford relative to the course to be pursued by the plaintiff in a sale on execution —was properly excluded.

Included in the nearly seven hundred pages of evi-

dence certified and set forth in the printed record, are many pages of argument on objections to the admission of evidence, whereas very few of the rulings are pursued on appeal and the arguments as to those are reproduced in the finding, also. No discernible useful purpose is served by the printing, with the evidence, of most of these arguments and colloquies, except to suggest the desirability of more restriction thereof through application of §151 of Rules of Practice (Practice Book, p. 276). On the other hand, a grievous waste of time and expense is incurred. Section 23 of the rules of this court (Practice Book, p. 315) provides that "nothing should be included which is not necessary for the proper presentation of the reasons of appeal, assignments of error, or questions reserved," and requires that counsel, trial court and clerks cooperate to the end that all proper abridgments of and omissions from the printed record may be made. Further repetition of admonitions that more general and diligent attention to and compliance with this rule will be insisted upon should not be necessary.

There is error and a new trial is ordered only for the assessment of damages.

In this opinion the other judges concurred.